[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were married in Albany, New York on June 2, 1982. No children have been born to the wife and the parties finally separated in November 1998. The plaintiff ("wife") has remained in the family home at 80 North Avenue, Westport, Connecticut. The husband currently lives in an apartment in Stamford, Connecticut.
The husband is 47 years old and for the past five or six years has been a partner in the New York branch office of a large, 200 partner law firm based in Chicago. His career with the firm began with his hiring as "of counsel." He is one of eight or nine New York partners, and he earns approximately $475,000, together with some significant perks. These include annual fees for an accountant, country club dues ($3500), health benefits, and an allowance for entertainment ($10,000). His current draw is based upon 72% of his past year's total compensation which is adjusted every April. Since being employed at his present firm, his income has increased steadily and significantly each year. As a member of the business law group at the firm, his areas of concentration include labor law and executive compensation. He holds a bachelor's degree from Tufts University (Summa Cum Laude/Phi Beta Kappa) and a law degree from Yale University, where he served on the Law Review. He has no other CT Page 13424 significant sources of income. Throughout the course of the marriage he was employed by several law firms until he found what was, in his words, "the right fit." One of the moves was made early in his career from Washington, D.C. to New Haven, Connecticut in order to accommodate the wife who obtained a fellowship at Yale. His capital account with the law firm has a current balance of approximately $119,000 and there is an IRA worth approximately $248,000. Throughout his career he has historically worked extraordinarily long hours. Other than some occasional residual pain from a back injury suffered in the early 90's, his health is good.
The wife is also 47 years and is a physician who practices within the public sector with part-time positions at Connecticut Hospice at Branford and the Cancer Center at the VA Hospital. She has not worked full time since 1988. Between both of those jobs she grosses approximately $56,000 per year. Her earning capacity is definitely an issue in this case. In addition, she has extra income approximately $12,000 a year from other sources, as well as regular annual gifts from her mother, except for this year, of between $5000 and $10,000. She, too, is well educated, graduating from Tufts University and Albany Medical School. She is Board Certified in both Oncology and Internal Medicine and interned at Yale University. Presently and historically she has been very active in community affairs and with her synagogue. She was past president of the Temple Israel Synagogue in Westport and currently serves on the Westport Town Council. She testified that she suffers from a chronic, radiating hip and back pain stemming from an injury which she suffered in Westport when she was pinned against her golf cart by a car exiting a parking lot. Although, she did testify that this accident may also have exacerbated an existing problem. As a result of this injury, she testified that it has greatly reduced her ability to participate in both golf and tennis. Previously, she had been the doubles champ at her club. Her testimony indicated that prolonged standing or sitting (such as driving a car long distances) are problematic, however, the Court notes that this has not prevented her from working (which involves substantial driving), lengthy air travel to job-related conferences, driving trips to her family's vacation home at Lake George, New York, as well as her participation in numerous community activities, which include (or have included) the Democratic Town Committee, the Woman's Crisis Center, the Anti-Defamation League, President and Past President of Temple Israel, the United Jewish Appeal, and the Westport Town Council (including several committees).
The marital home is located at 80 North Avenue in Westport. The property was purchased in July 1984and title is and has been in the wife's name, however, the first mortgage and the home equity line are in joint names. The wife testified that she made the initial down payment in the amount of $38,000, however, the husband testified that he has made most CT Page 13425 of the mortgage and tax payments throughout the marriage. The parties stipulated that the fair market value of the real estate is $467,500, against which there is a first mortgage of approximately $128,500 and a home equity line of approximately $48,000 leaving equity of $291,000. During the period between October 1999 and September 2000, the home equity borrowing increased by about $14,000, and, according to the husband, this is attributable solely to the wife. There was lengthy and disputed testimony with regard to the various contributions of the parties to the maintenance and improvement of the real estate. However, the testimony and evidence clearly indicates that the wife made, by far, the most significant contributions to the actual renovation and remodeling of the home, which she was able to document for the Court, including a kitchen, bath rooms, and a new porch and deck totaling approximately $100,000. The un-controverted testimony of the husband showed that he contributed approximately $2000 — $3000 per month toward mortgage, taxes, club dues, credit card bills, as well as other cash payments to the wife and for the benefit of the household. He reduced his payments sometime after he left the family home.
The wife also has an IRA which totals approximately $121,000. In addition she has jewelry and furs valued at $125,000, most of them lavished on her by the husband during the marriage, as well as a personal injury claim with an undetermined value stemming from her injury by the automobile in 1995. She does have a small thrift plan through an employer. Each party drives a car. The wife drives a 1998 Mercedes. Each party claims an interest in the bonds at the Rolling Hills Country Club. In addition, the wife claims interest in bonds at the Aspetuck Valley Country Club.
One of the principal bones of contention revolves around the nature and legal status of the plaintiff's interest in three entities — two trusts and a partnership. The first entity, the H.W. Rome Trust was set up by her late father. She has a 1/3 interest in this trust corpus which testimony indicated amounts to nearly $630,000. The second entity is the Doris Rome Trust. The principal asset in this entity is a very small interest in real estate located at Homer Point, Bolton, New York. The final entity is TLC Partners (Three Lucky Children) which holds real estate in Albany, New York and produces income. The questions presented to this court are:
 1. Does the wife have a vested interest in any or all of these three entities?
2. What are their values?
 3. Should any or all be considered by the court CT Page 13426 for equitable distribution?
Over the course of three days, the Court heard testimony, principally from both parties, which was tinged with both bitterness and sorrow over "what might have been." The couple is childless, however, but not for want of trying. The wife testified that since 1988, she has attempted 20 in vitro procedures at various locations throughout the country (Yale, Norfolk, VA, and Carmel, CA), at a cost of between $5000 and $6000 per procedure, none of which proved successful. She also testified to the loss of at least two pregnancies by miscarriage between 1982 and 1984. Although denied by the husband, the wife testified that he said that he would, "leave her if she did not have a baby." Given their occupations and obvious high earning capacities, the Court feels that the parties had ample opportunity to create for themselves a very comfortable and satisfying life together. The Court can only speculate that the shadow hanging over this marriage was the lack of a child, something neither one of them has been able to get over. Compounding the problem was the husband's compulsion to succeed at his job, keeping hours that brought him home well after midnight on a regular basis. The wife described him as "a workaholic" who refused to take or return her telephone calls. In an attempt to modify her husband's behavior, the wife testified on cross examination that she locked him out of the house, and threw the deadbolt, on at least five occasions. She told the Court that she did not trust the basic door lock, however, the Court does not find her testimony to credible on this point. The husband, on the other hand, testified that his wife's behavior amounted to harassment with her calls to his managing partner, his mother, and his therapist. The Court can only further speculate as to the potential effects, so early in their marriage, of the real estate being placed solely in the name of one partner. The Court notes that the husband was very nearly obsessive with regard to record keeping. He testified at one point that he even logged in on his "Quicken" program on a daily basis, any cash that he gave to his wife for household or other purposes. There was some testimony regarding violence, which the Court does not find persuasive. However, the Court does believe that there was significant verbal battering by both parties, in particular, in the later stages of the marriage. The husband testified that they were "unable to work as a couple," and that the wife simply "took control." The parties never shared a bank account except for the year the wife spent at Yale, and they stopped sharing a bedroom some years ago. Individual and joint counseling has failed to save the marriage. The Court cannot help but conclude that what may have started with mutual high hopes for a happy marriage, soon became converted to that of a less than ideal business relationship.
 FINDINGS
CT Page 13427
The Court, having heard the testimony of both parties, and having considered the evidence presented at hearing, as well as the factors enumerated in Sections 46b-40, 46b-51, 46b-62, 46b-63, 46b-81, and 46b-82
of the Connecticut General Statutes, hereby makes the following findings:
1. That it has jurisdiction.
 2. That the allegations of the complaint are proven and true.
 3. That the marriage of the parties has broken down irretrievably, and that ample evidence exists that both parties have contributed to said breakdown.
 4. That based upon the testimony of the parties, as well as the deposition and report of Terry H. Korn, the wife has an earning capacity well in excess of the income reflected on her Financial Affidavit. Her physical/medical condition has presented her with some challenges, however, having heard extensive testimony on this issue regarding her employment as well as her active involvement in the Westport community and her synagogue, the Court finds that any limitations on her obtaining and maintaining full-time employment are largely self-imposed. The Court makes the further finding that her earning capacity is at least $150,000 per annum.
 5. That the fair market value of the real property located at 80 North Avenue, Westport, Connecticut is $467,500, and that the tangible and intangible contributions of both parties to the maintenance and improvement to the real property were substantial. The Court makes a further finding that, in addition to the initial down payment for the real estate at the time of purchase in the amount of $38,000, the wife made contributions to capital improvements of at least $100,000, and that the husband made consistent and regular payments of the mortgage, taxes, and upkeep of at least $2000 — $3000 per month until sometime during the year 2000.
 6. That the wife is a one third (1/3) beneficiary under the terms of a testamentary trust established under the will of her father, Howard W. Rome, dated CT Page 13428 January 25, 1983 (hereinafter "H.W. Rome Trust"); that her father died on May 8, 1985; and that she possesses a vested interest therein, subject to life income to her mother and possible defeasance of the corpus in favor of her mother, at the discretion of the trustee. The Court makes the further finding that the corpus of the H.W. Rome Trust as of July 31, 2000 was $628,854.00, that the wife's share is $209,618.00, and that the husband made no contribution to the formation or funding of the trust nor to the maintenance and preservation of this asset during the course of the marriage.
 7. That the wife is a one third (1/3) beneficiary under the terms of the Doris S. Rome Irrevocable Trust U/A dated December 28, 1993 (hereinafter "Trust"); that she has a vested present interest therein; and that the principal asset of the Trust is an undivided 4% interest in a dwelling and land located at Homer Point, Bolton, N.Y. (also referred to as the "Lake George House"). The Court makes the further finding that said real property, has a fair market value of $1,080,000, and that the value of the wife's interest therein is $14,400, and that the husband made no contribution to the formation or funding of this trust nor to the maintenance and preservation of this asset during the course of the marriage.
 8. That the wife has a vested one third (1/3) interest in an entity known as TLC Partners LLC (hereinafter "TLC") established by the wife and her two siblings on January 1, 1990; that the entity holds real property at 212-214 Central Avenue, Albany, NY, having a value of approximately $150,000 and other assets having a value of as of July 31, 2000, of $648,928.00 for a total value of $798,928.00; that the value of the wife's interest is $266,309.33; that it is a marital asset, and that the husband made no contribution to the maintenance and preservation of this asset during the course of the marriage.
 9. That the proceeds, if any, from the wife's pending lawsuit (Rome v. Mahone) is a marital asset which the Court must consider pursuant to Section 46b-81
CT Page 13429 C.G.S., however no evidence was introduced as to the value of that claim. The Court further finds that it would be equitable and appropriate to award the entire claim to the wife, and that any recovery should offset any past, present, and future medical expenses, pain and suffering, and permanent disability.
 10. That the husband's Capital Account at the law firm of Seyfarth, Shaw, Fairweather Geraldson, which was started in 1995 and has a present balance of approximately $119,000, is a marital asset which the Court must consider pursuant to Section 46b-81
C.G.S., that the Court finds the husband's testimony regarding this issue to be credible, and that the wife's contribution to the maintenance and preservation of this asset during the course of the marriage was de minimus.
 11. That the wife is the current owner of certain securities accounts having a total value of approximately $131,000, and that the genesis of these accounts was a certain Dreyfus Liquid Asset Account which wife brought to the marriage (Dreyfus Account (#039-06002171-4) with a balance of approximately $65,000 on June 6, 1984, which, absent evidence as to the exact value of the account as of the date of marriage, the Court has used as a benchmark, and that this sum is not find marital property. However, the Court makes a further finding that due to the husband's significant and disproportionate contributions to the household throughout the marriage, that it is equitable and appropriate that he share in the appreciation and growth of the securities portfolio during the marriage, and that the Court finds that appreciation to be $66,000.
 12. That there are certain bank accounts standing in the name of the wife having a total of approximately $16,500.00, and that due to the husband's significant and disproportionate contributions to the household throughout the marriage, the wife had the ability to accumulate these monies, and that it is equitable and appropriate that he share in these funds. CT Page 13430
 13. That the wife has pension and retirement funds totaling approximately $122,000, and that the husband has a retirement account totaling approximately $248,000, and that the wife has other significant assets as evidenced by her interest in the family trusts and the LLC, and that it is therefor equitable and appropriate that each party keeps his or her respective retirement accounts free and clear from any claims by the other.
 ORDER
IT IS HEREBY ORDERED THAT:
 1. The marriage of the parties is hereby dissolved on the grounds of irretrievable breakdown, and they are each hereby declared to be single and unmarried.
 2. Commencing November 3, 2000, and monthly thereafter, the husband shall pay to the wife the sum of $7,500 as and for periodic alimony, until the death of either party, the remarriage of the wife, or November 2, 2003, whichever shall sooner occur. Thereafter, commencing November 3, 2003, the husband shall pay to the wife the sum of $5,000 as and for periodic alimony, until the death of either party, the remarriage of the wife, or November 2, 2005, whichever shall sooner occur. This alimony award shall be non-modifiable by the wife as to term and amount.
 3. As to the real estate at 80 North Avenue, Westport, Connecticut, upon the sale or other transfer of title to the property (or any portion of it), a refinance of the existing mortgage or home equity line, or the obtaining of new or additional financing, or within two (2) years from the date of this Memorandum of Decision, whichever shall sooner occur, the wife shall pay to the husband the sum of ONE HUNDRED TWENTY-FIVE THOUSAND AND NO/100 DOLLARS ($125,000). The wife shall execute a simple Promissory Note to the husband containing the usual language regarding the payment of reasonable attorneys fees and costs in the event of her default, and which shall not bear interest if paid CT Page 13431 on or before the end of such two (2) year period, but which will carry simple interest at the rate of eight (8%) percent per annum thereafter until paid in full. Said Promissory Note shall be secured by a mortgage deed. Both the deed and note shall be executed and delivered to the husband within two (2) weeks from the date of this Memorandum of Decision. It is the intention of this Court that the husband's mortgage shall have a priority over any further advances over and above the current balance of the existing home equity line, and that the wife shall incur no additional indebtedness regarding the property, except for the purpose of satisfying her obligation for the mortgage to the husband as set forth herein. The wife shall use her best efforts to refinance the existing mortgage and home equity line and/or otherwise eliminate any obligations of the husband thereunder within two (2) years from the date of this Memorandum of Decision. In the event that said payment is not made to the husband in accordance with this Memorandum of Decision, the wife shall list the property for sale with the Multiple Listing Service (or similar agency) with a real estate broker familiar with real estate values in the Westport area, within thirty (30) days of a written demand made upon her by the husband or his attorney. The obligation to the husband, together with any accrued interest, shall be paid at closing from the net proceeds of the sale of said property. The Court hereby reserves jurisdiction to decide any issues regarding the sale of the real estate or the enforcement of any obligations arising out of this paragraph.
4. Personal property shall be divided as follows:
 A. The items of personal property set forth in Defendant's Exhibit BB entitled "Schedule A, Personal Property Inventory" with the exception of his claim to 1/2 of the wife's mink coat and her jewelry, which items the Court has awarded to the wife, shall be the property of the husband. The balance of the home furnishings and personal property shall belong to the wife. In the event that the wife objects to the husband's claim to one or more items on said list, she must file with counsel CT Page 13432 for the husband a written objection to such item or items within two (2) weeks from the date of this Memorandum of Decision. In the event that the parties are unable reach a resolution, the issue is hereby referred to Family Relations for resolution and recommendation. The Court hereby reserves jurisdiction to hear and decide any issues which may arise regarding the division of personal property.
 B. Each party shall be entitled to keep the automobile which they are currently driving free and clear of any claims by the other, and each party shall cooperate with the other regarding the execution of any documentation necessary to transfer and/or register same.
 C. The wife shall be entitled to keep the following items of property free and clear of any claims by the husband:
 1. Her interest as a beneficiary in the Doris S. Rome Irrevocable Trust dated December 28, 1993.
 2. Her interest in the Trust created under the Last Will and Testament of H.W. Rome dated January 25, 1983.
3. Her interest in TLC Partners LLC.
 4. The Aspetuck Valley Country Club bonds totaling approximately $18,400. In the event that the change of marital status of the parties permits only one party to remain a member, it is the intention of this order that the wife shall have priority, and the husband shall promptly execute any documentation necessary to effectuate same.
5. Her fur coat and jewelry.
 D. The husband shall be entitled to keep the following items free and clear of any claims by the wife:
 1. The Rolling Hills Country Club bonds totaling approximately $7500, and the wife shall promptly execute whatever documentation necessary to carry this order into effect. In the event that the CT Page 13433 change of marital status of the parties permits only one party to remain a member, it is the intention of this order that the husband shall have priority, and the wife shall also promptly execute any documentation necessary to effectuate same.
 2. His share of the capital account of Seyforth, Shaw, Fairweather Geraldson.
E. The retirement accounts shall be divided as follows:
 1. The wife shall keep her existing Fidelity and Fleet independent retirement accounts, as well as her Thrift Savings Plan, free and clear any further claims by the husband.
 2. The husband shall keep his IRA/Keough plan free and clear of any claims by the wife.
 F. The current balances in the bank accounts, as shown on their respective financial affidavits on file as of the date of the hearing, whether standing in sole or joint names, shall be divided equally between the parties.
 6. The husband shall promptly notify his employer as to the change of marital status and shall cooperate with the wife in obtaining continuation health insurance coverage as provided by state and federal law. In the event that the wife is eligible for such coverage and elects to obtain same, the husband shall contribute to the cost of the premiums for the wife's continuation health insurance coverage in an amount not to exceed $300.00 per month, and the wife shall be responsible for the balance of the premiums, if any, until the death of either party, the remarriage of the wife, in the event that she is ineligible for such coverage, or three (3) years, whichever shall sooner occur. Such payments by the husband shall be considered additional periodic alimony.
 7. The husband shall maintain the existing group term life insurance in the amount of $170,000, and shall name the wife as beneficiary thereof for so long as CT Page 13434 he has an obligation to pay alimony under the terms of this decree.
 8. The parties shall be responsible for the debts as shown on their respective financial affidavits.
 9. The parties shall share equally any refunds received from the joint state and federal income tax returns filed for the year 1999. Each party will cooperate with the other in the endorsement of any refund checks in order to facilitate a division consistent with this order.
 10. The parties shall equally divide the federal and State of Connecticut tax refunds for the year 1998. The husband shall be entitled to the Illinois and California refunds for 1998.
 11. Each party shall be responsible for their respective attorneys fees and costs incurred in connection with this action.
 12. The wife's Motion for Retroactive Pendente Lite
alimony is hereby denied.
 13. The Court hereby orders a Contingent Wage Withholding Order pursuant to Section 52-362 C.G.S in order to secure the payment of the alimony order.
THE COURT
SHAY, J.